## CIRCUIT COURT OF TAZEWELL COUNTY

Bill Greever Corp.
and Bill B. Greever, Sr.

v.

Tazewell National Bank
and Citizens Bank of Tazewell

January 16, 1997

Case No. (Law) CL94000100

BY JUDGE KEARY R. WILLIAMS

I have now read and reread the pleadings, responsive pleadings, motions, memorandum and responding memorandum, as well as the transcript and argument previously conducted in my chambers some time ago and render my opinion as follows.

A Motion for Summary Judgment will fail if there is a genuine issue of material fact. *Piland Corp. v. League Const. Co.*, 238 Va. 187, 380 S.E.2d 652 (1989). "Upon considering a Motion for Summary Judgment, the Court must rule, as a matter of law, on the sufficiency of the evidence; it does not weigh the evidence as a finder of fact. Accordingly, the Court must draw those inferences most favorable to the non-moving party." *Id.* at 189.

Defendant Tazewell National Bank's ("TNB") Motion for Summary Judgment rests upon three arguments: that the Plaintiffs' claims are barred by the Statute of Limitations; the claims are barred by res judicata; and the claims are barred because the Plaintiff, Bill Greever, has no standing to sue.

Defendant TNB's Motion for Summary Judgment based upon res judicata will be sustained as to the Plaintiffs, Bill Greever and Bill Greever Corporation ("BGC"). The Court finds that the Chapter 11 bankruptcy action instituted by Bill Greever culminating in the confirmation of his bankruptcy plan and his release of his dischargeable debts on March 21, 1994, serves as a res judicata - bar to the present actions by Bill Greever and BGC.

"The doctrine of res judicata is that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter as between the parties or their privies, in any subsequent suit, in the same court or any other court ... ." *Patterson v. Saunders*, 194 Va. 607, 74 S.E.2d 204 (1953), citing *Hedlund v. Miner*, 395 Ill. 217, 170 A.L.R. 1306, 69 N.E.2d 862 (emphasis added). Bankruptcy Courts sitting in Virginia have previously declined "to interpret the doctrine of res judicata in the bankruptcy context differently from the traditional interpretation of res judicata in law." *Colonial Auto Center, Inc. v. Tomlin*, 184 Bankr. 720 (E.D. Va. 1995). The *Tomlin* Court emphatically held that "[t]he doctrine of res judicata [does apply] in the bankruptcy context." *Id*. The elements of res judicata in Virginia are "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the person for or against whom the claim is made." *Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125 (1986), citing *Mowry v. City of Va. Beach*, 198 Va. 205, 93 S.E.2d 323 (1956).

First, the Court will look at the identity of the parties involved. Plaintiff Bill Greever filed the bankruptcy action and listed TNB as one of his creditors. While there is no Virginia state case directly on point, this Court's reasoning is based mainly upon the rationale found within *In re Grimm*, 168 Bankr. 102 (E.D. Bankr. Va. 1994). There, the Court held that "an order confirming a plan for reorganization is a final judgment on the merits for the purposes of res judicata." *Id*. Accordingly, any claim by Bill Greever with TNB is considered as a final judgment on the merits.

Dealing with the third and fourth elements of res judicata secondly, it becomes apparent from looking at the supporting bankruptcy paperwork, supplied through discovery, that Bill Greever and TNB were parties to the bankruptcy action. Therefore, the inclusion of both of these parties satisfies the third and fourth elements of res judicata.

In determining the second element, which is the similarity of the two causes of action, "the Court of Appeals for the Fourth Circuit has adopted a transactional approach ... [saying] that the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Id*. In determining "whether a confirmed plan precludes a suit that is filed after confirmation," other courts

of appeals have applied this "transaction-based approach" as well. *Id.* The Second Circuit Court of Appeals has ruled "that res judicata preclude[s] ... lender liability suits that the debtor and its principals had brought against two banks after plan confirmation." *In re Grimm*, 168 Bankr. 102 (E.D. Bankr. Va. 1994), citing *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869 (2d Cir. 1991). In *Sure-Snap*, the debtor brought suit against a bank after it "called a loan early and terminated a line of credit to the debtor." *Id.* at 875. The Debtor claimed that the conduct of one of the defendant banks "[had] forced [him] into bankruptcy." *Id.* at 875. The Second Circuit said that "[the debtor's] very allegation that the bank's tortious conduct *negatively influenced their business health* makes it hard-pressed to explain how the two causes of action — the plan of reorganization and the lender liability claims — did not comprise the same essential matter." *Id.* at 875. (Emphasis added.) The facts in *Sure-Snap* largely mirror the facts in this present case. Therefore, this Court adopts the logic utilized by the Second Circuit and acknowledged by the Court in *In re Grimm*.

In the present case, the Plaintiffs state emphatically in paragraphs 11, 21, 36, and 43 of their Second Amended Motion for Judgment (hereinafter "Motion for Judgment") that the actions of the Defendant TNB played a part in forcing the Plaintiff Bill Greever to seek bankruptcy protection. The Plaintiffs also plainly state in paragraph 36 that the "subsequent bankruptcy of Mr. Greever injured the credit and business of Mr. Greever and BGC . . ." thereby forming a basis for part of their claim. The main difference between the case at hand and *Sure-Snap* is the involvement of an additional Plaintiff, Bill Greever Corporation.

Two tenets of Virginia law support this Court's application of res judicata to the claims of both Plaintiffs. Those tenets are virtual representation and privity of parties.

The Fourth Circuit Court of Appeals has held that "nonparties may be bound by a judgment under the doctrine of virtual representation ... ." *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917 (1974), noting *Klugh v. United States*, 818 F.2d 294 (4th Cir. 1987). This doctrine holds that "a nonparty to an action may be bound by a judgment under res judicata if one of the parties to the action is so closely aligned to the interests of the nonparty as to be his virtual representative." *Id.* at 673. Here, the interests of Bill Greever and BGC are closely aligned. Bill Greever is the President of BGC and its sole shareholder. Bill Greever sought to file bankruptcy so that he could protect his interests, but in doing so, he sought to protect the interests of BGC as well. In fact, the Motion for Judgment states that the interests of both Bill Greever and BGC were injured by the actions of the Defendant TNB and that those actions

hindered the Plaintiffs from acquiring loans in any other bank. The Motion for Judgment specifically states that Bill Greever filed bankruptcy due to the actions of the Defendant TNB, and this allegation forms part of the basis for the Plaintiffs' Motion for Judgment. The loans obtained through TNB were for the benefit of Bill Greever and BGC. Bill Greever executed the applicable loan "notes" as a principal of the corporation and in his "individual capacity." Bill Greever and BGC paid the interest on the loan together. Bill Greever used his personal property to secure the loan made to BGC and Bill Greever. Both Plaintiffs claim the same injuries. In short, the claims of BGC and Bill Greever are intertwined. The Motion for Judgment implies that the harm done to one Plaintiff could not have occurred without the harm done to the other and that both plaintiffs suffered equally due to the Defendants' actions. Therefore, the Court finds that the interest of BGC were virtually represented by Bill Greever in his personal bankruptcy.

The Virginia Supreme Court has said that "[t]here is no fixed definition of privity that automatically can be applied to all cases involving res judicata issues." *Nero v. Ferris*, 222 Va. 807, 284 S.E.2d 828 (1981). However, "privity generally involves a party so identical in interest with another that he represents the same legal right, [and] a determination of just who are privies requires a careful examination into the circumstances of each case." *Id.* When determining whether privity exists, a Court will look to circumstances such as the "relationship, interests, and legal rights of the . . ." two parties. *Race Fork Coal v. Turner*, 5 Va. App., 350, 363 S.E.2d 423 (1987), *reversed on other grounds* 237 Va. 639, 379 S.E.2d 341 (1989). Bill Greever and BGC share a close relationship as evidenced by the fact that Bill Greever is the President of the Corporation and is the sole shareholder. As discussed above, Bill Greever and BGC's claims are intertwined, and they possess identical interests in the case at hand. Both Plaintiffs were signatories to the subject loans of the controversy, and each possessed equal legal and contractual rights. Both Plaintiffs suffered alleged financial injury due to the actions of Defendant TNB. Significantly, both Plaintiffs claim the bankruptcy somewhat harmed their credit reputation which, in turn, harmed them financially. When looking at the relationship between Bill Greever and BGC and the similarity of interests and legal rights involved, it is clear that privity existed between them.

Accordingly, under the principles of "virtual representation" and "privity of parties," this Court considers the interests of BGC to be adequately represented by Bill Greever in his personal bankruptcy action. In light of this holding, the claims by Bill Greever and BGC against TNB are barred by the res judicata effect of the bankruptcy. The Court sustains Defendant TNB's Motion for Summary Judgment in regard to Counts I, II, III, IV, and V and

hereby dismisses Count X dealing with a joint claim against TNB and Citizens Bank of Tazewell ("CBT").

The Court declines to address the other bases of the Defendant TNB's Motion for Summary Judgment due to its decision based upon res judicata.

The Court's ruling in TNB's Motion for Summary Judgment does not affect the Plaintiffs' Counts against Defendant CBT. Although these Counts mirror those against TNB, the claims against CBT are based upon different facts. Also, CBT has not moved for summary judgment but has only demurred to the Plaintiffs' Motion for Judgment.

Defendant Citizens Bank of Tazewell has demurred to the claims specifically made against them. "A demurrer ... tests the sufficiency of the factual allegations to determine whether the pleading states a cause of action." *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320, 455 S.E.2d 712 (1995). In order for the Plaintiffs' Motion for Judgment to survive a demurrer, it must only state the essential elements of the cause of action which it alleges. "[T]he sufficiency of a Motion for Judgment is whether it states the essential element of a cause of action, not whether evidence might be adduced to defeat it." *Commonwealth ex rel. Pross v. Board of Supervisors of Spotsylvania County*, 225 Va. 492, 303 S.E.2d 887 (1983). "In reviewing the sufficiency of a Motion for Judgment on Demurrer, the Trial Court is required to consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 435 S.E.2d 400 (1993).

Virginia's Commercial Code, under § 8.1-203, states that "[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." Virginia Code § 8.1-203 (Michie, 1950). "Good faith" is defined by Virginia Code § 8.1-201(19) as "honesty in fact in the conduct or transaction concerned." Virginia Code § 8.1-201 (Michie, 1950). As stated above, the purpose of a Demurrer is to test the sufficiency of a Motion for Judgment and to determine whether a Plaintiff has stated all of the elements of a cause of action. *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320, 455 S.E.2d 712 (1995). In this instance, the Court finds that there is no cause of action recognized in Virginia for the tort of "Breach of Duty of Good Faith." Although the Plaintiffs are not suing in tort on this cause of action, for the reasons discussed below, this Court sustains the Demurrer as to this Count.

After much legal discourse on the subject, the Virginia Supreme Court pointedly addressed this area of law early this year in its *Charles E. Brauer Co. v. NationsBank of Va., N.A.* decision. There, the Court said that:

while a duty of good faith and fair dealing exists under the U.C.C. as part of every commercial contract, we hold that the failure to act in good faith under § 8.1-203 does not amount to an independent tort.

*Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28 (1996). Plaintiff's argument that the *Brauer* decision's effect only preempted "tort" actions based upon a breach of duty of good faith is correct, but this argument is shortsighted. The Virginia Supreme Court also said that when there is a breach of the implied duty of good faith under the U.C.C., such a breach "gives rise *only* to a cause of action for breach of contract." *Id.* at 33. (Emphasis added.) Based upon this statement, the Plaintiffs would have a cause of action, but it must be brought under a breach of contract theory.

Wrongful dishonor is a statutorily created cause of action found in Virginia Code § 8.4-402. The statute provides that "a payor bank wrongfully dishonors an item if it dishonors an item that is properly payable." Virginia Code § 8.4-402 (Michie, 1950). In testing the sufficiency of a pleading alleging wrongful dishonor, the Court must determine if the Plaintiff has pleaded facts alleging that properly payable checks were wrongfully dishonored. From looking at the fact of the complaint, the Court finds that the Plaintiffs have pleaded sufficient facts to state a cause of action for wrongful dishonor. While the Plaintiffs cannot move forward with an action based upon breach of duty of good faith, they nonetheless can rely on the allegations that CBT did not exercise good faith in maintaining a cause of action based upon wrongful dishonor. The Plaintiffs imply in their Motion for Judgment that they viewed the dishonored checks as being "properly payable" in light of the oral discussions with CBT regarding the loan restructuring and the sending of notices of interest payments due. The Plaintiffs considered the substance of the oral discussion as being an affirmation that they remained in good standing with CBT and therefore gained assurance from those oral discussions that no unfavorable action would be taken by CBT in the wake of the personal bankruptcy of Mr. Greever. The Plaintiffs have sufficiently pleaded a cause of action for wrongful dishonor, and CBT's Demurrer to this Count is overruled.

The Plaintiffs' claim based upon promissory estoppel presents the Court with the question as to whether Virginia provides for such a cause of action. The Court finds no law that flatly denies the existence of a cause of action based upon promissory estoppel. The Virginia Supreme Court has addressed this contractual remedy before without explicitly stating whether it was a viable cause of action in Virginia. In *Stone Printing and Mfg. Co. v. Dogan*, the Court did state that it "assume[d] without deciding that the doctrine of

promissory estoppel applie[d] in Virginia" and then went on to discuss the doctrine's elements before ruling that the evidence failed to support the application of the doctrine. *Stone Printing and Mfg. Co. v. Dogan*, 234 Va. 163, 360 S.E.2d 210 (1987). For the purposes of dealing with the Defendant CBT's Demurrer, this Court likewise assumes that the doctrine of promissory estoppel applies in Virginia. The Court gains support for this assumption from the decision in *MBA v. VNU Amvest, Inc., and Disclosure, Inc.*, where the bankruptcy court, sitting in Virginia, said that recovery under the doctrine of promissory estoppel "would not be prohibited under ... Virginia law." *MBA, Inc. v. VNU Amvest, Inc., and Disclosure, Inc.*, 51 Bankr. 966 (E.D. Va. 1985). The elements for promissory estoppel are:

> (1) a promise, (2) reasonable and foreseeable reliance on the promise, (3) resulting detrimental action or forbearance by the promisee, (4) injustice avoidable only by enforcement of the promise.

*MBA, Inc. v. VNU Amvest, Inc., and Disclosure, Inc.*, 51 Bankr. 966 (E.D. Va. 1985), citing *Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035 (D.C. Cir.), *cert. denied* 429 U.S. 821 (1976). The definition of promissory estoppel is succinctly stated in the Restatement (Second) of Contracts where it says that the doctrine of promissory estoppel:

> provides that a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Stone Printing and Mfg. Co. v. Dogan*, 234 Va. 163, 360 S.E.2d 210 (1987). The Plaintiffs have alleged that an oral discussion took place where CBT gave its assurances that the loan would be restructured once the "bankruptcy case was closed" and would also send notices to Plaintiffs as interest became due on the loan notes. The Court deems those assurances enough to warrant a "promise" for purposes of promissory estoppel. The Plaintiffs go on to state that they relied on CBT's promise as they continued to use the bank's services and continued to conduct business. The Plaintiffs then allege that they suffered in their forbearance from paying any interest on the loan notes when CBT seized their account and caused some checks to be dishonored. The Plaintiffs finally state that they have suffered and will continue to suffer because of the actions by CBT and ask to be compensated in light of those actions.

Defendant CBT's argument based upon their right to set off the Plaintiffs' account is misplaced when they have demurred to the Plaintiffs' Motion for

Judgment. When dealing with a Demurrer, the Court must only determine whether the Plaintiff has pleaded sufficient facts to constitute a viable cause of action. The Court cannot consider whether those allegations will withstand a trial on the merits or "whether evidence might be adduced to defeat [the Motion for Judgment]." *Commonwealth ex rel. Pross v. Board of Supervisors of Spotsylvania County*, 225 Va. 492, 303 S.E.2d 887 (1983).

Accordingly, this Court finds that the Plaintiffs have pleaded a sufficient cause of action of promissory estoppel, and CBT's Demurrer as to this Count is overruled.

Defendant CBT has demurred to Counts IX and X of the Motion for Judgment alleging tortious interference with a business expectancy. The Court has already previously disposed of Count X and here addresses only Count IX. The tort of tortious interference with a business expectancy has four elements as recognized in Virginia. They are:

(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff. *Glass v. Glass*, 228 Va. 39, 321 S.E.2d 69 (1984).

The Court looks to the fact of the Motion for Judgment to see if the Plaintiff has sufficiently pleaded elements that make up a cause of action for a tortious interference with a business expectancy. From the complaint, the Court finds that the Plaintiff has pleaded "the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff" by alluding to the fact that BGC makes bids for jobs in order to conduct business and relies upon bid solicitations in order to remain economically viable.

In regard to the second element, Plaintiff has alleged in paragraph 78 that CBT knew of the bids that BGC had qualified for in the past and that CBT knew that BGC "expected to continue to obtain bids." Such an allegation, if true, meets the substance of the second element here. The loan agreements themselves served to alert Defendant to the purpose of the loan as being that for the business. (The loans made by CBT are evidenced by various loan applications which include "Bill Greever Corporation" as the name of the borrower, and under the section listing the purpose of the loan are the words "business renewal" or "business." The Court finds adequate evidence from the pleadings that Defendants had knowledge that the loan proceeds were to be

used for the Plaintiffs' business.) By reason of Plaintiffs' responses to CBT's Motion to Crave Oyer, I have considered the notes as part of Plaintiffs' pleading since in Plaintiffs' response to Crave Oyer, the loan documents, "notes," were included as a collective exhibit as if set out in its Motion for Judgment and Amended Motion for Judgment.

As part of the third element, the Plaintiff alleges that CBT's intentional seizing of its accounts inhibited it from obtaining credit elsewhere and deprived Plaintiffs of working capital. The Plaintiff's characterization of the seizing of its account as "wrongful" is based upon its reliance on the alleged oral discussion with CBT regarding the restructuring of the loans and giving of notices. The Court must consider the facts alleged as true and therefore finds that the Plaintiffs have properly alleged "intentional misconduct" as required by Virginia law.

Finally, the Plaintiff has laid out in detail as part of its Motion for Judgment the amount of damages sustained as to each Count alleged. In order to defeat a Demurrer, a Plaintiff must plead all of the elements constituting a cause of action. *Commonwealth ex rel. Pross v. Board of Supervisors of Spotsylvania County*, 225 Va. 492, 303 S.E.2d 887 (1983). The Court finds that the Plaintiff has successfully pleaded the requisite elements for tortious interference with a business expectancy in its Motion for Judgment.

The Court has reviewed CBT's Memorandum in Support of its Demurrer in regard to this cause of action and finds the arguments put forth by CBT as well grounded in law, but the Motion for Judgment alleges more than just a tortious interference with a business expectancy. The Court "is required to consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 435 S.E.2d 400 (1993). If the facts alleged in the Motion for Judgment are taken together as true, then CBT's setting off the Plaintiff's bank accounts and seizing the Plaintiff's vehicles would have appeared questionable and could be viewed as "misconduct." These allegations taken together with the claim for tortious interference serve to defeat CBT's argument as to whether it committed any "intentional misconduct." The Court finds that the law cited by CBT in its supporting memorandum is distinguishable in light of the other allegations put forth by the Plaintiff. In *Taylor's Auto Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.*, 1993 U.S. Dist. LEXIS 12271 (W.D. Va. 1993), the only claim addressed by that Court was one for tortious interference. Had the District Court had before it allegations of lack of good faith on the part of the Defendant, then its ruling would most assuredly have been affected.

CBT's argument regarding the requirement that Plaintiff plead particular expectancies is misplaced as well. In *American Tel. & Tel. v. Eastern Pay Phones, Inc.*, 767 F. Supp. 1335 (E.D. Va. 1991), the District Court responded to a Motion to Dismiss, not a Demurrer. In ruling upon a Demurrer, the Trial Court can infer facts from the allegations contained in the pleadings. *See Luckett v. Jennings*, 246 Va. 303, 435 S.E.2d 400 (1993). The Court finds the facts in the present case distinguishable from the facts in *Eastern Pay Phones*. Plaintiff sought loans from the Defendants here for the very purpose of remaining a viable business, capable of making and receiving bids for employment. Plaintiff's "reasonable certainty" rested in its ability to make and receive those bids as is the custom in its particular business. The cross-complainant in *Eastern Pay Phones* had no such relationship with the cross-defendant. Moreover, the portion of the Court's decision in *Eastern Pay Phones* that is relied upon by CBT has been vacated, and this Court is reluctant to base its ruling upon such a case.

"A Demurrer does not permit the Trial Court to evaluate and decide the merits of the claim set forth in a ... Motion for Judgment ... ." *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320, 455 S.E.2d 712 (1995). In ruling upon Defendant's Demurrer, the Court must only determine "the sufficiency of a Motion for Judgment [and] whether it states the essential elements of a cause of action ... ." *Commonwealth ex rel. Pross v. Board of Supervisors of Spotsylvania County*, 225 Va. 492, 303 S.E.2d 887 (1983). The Court hereby overrules CBT's Demurrer as to Counts VI, VII, VIII, and IX.

The Court, finding that Counts I, II, III, IV, and V of the Second Amended Motion for Judgment do not contain allegations against Defendant CBT, does hereby sustain CBT's Demurrer as to those Counts.